## HENRY C. YOUNG et al. v. EUNICE CARL et al.

6   412
105   558
105   581

In the absence of evidence to show the value of the fruits of property belonging to minors, the tutrix who has acted in good faith is liable only for legal interest on the appraised value of the productive property; and where the tutrix possessed in good faith, as her own, property which in reality belonged to the minors, she is liable for interest only from judicial demand.

A disposition of more than the disposable portion is not null, but only reducible upon the action of the heirs to the disposable portion.

Where minors, after becoming of age, purchased property for less than its appraised value, on a judgment obtained against their mother as tutrix; brought an action, alleging the nullity of the said judgment and claiming a new settlement, they will be compelled, so far as third persons are concerned, to account for the property, so purchased and retained by them, at the appraised value, and not at the price given by them.

APPEAL from the District Court of East Baton Rouge, Burk, J.   A. M. Dunn, for plaintiffs.   George S. Lacey and J. M. Elam, for defendants. The judgment of the court was pronounced by

ROST, J.   In 1820, the defendant, Eunice Carl, was married to Benjamin Hook. In 1822, Hook died, leaving a will, by which he bequeathed his entire estate to his wife, with the reservation, that if he should have a son or daughter after his death, as he expected, his property should be equally divided between his wife and his posthumous offspring.   A short time after the death of the testator, his son, Benjamin Hook, Jr., was born.   In 1824, Eunice Carl contracted with Joseph Young the marriage from which the plaintiffs are the issue.   In 1833, Benjamin Hook, Jr., died.   On the following year, Joseph Young also departed this life, and Eunice Carl was confirmed as natural tutrix of the plaintiffs. Proceedings were then had, under which, property, supposed to belong to the community between Young and his wife, was adjudged to her at the price of the appraisement in the inventory of his estate; and to secure the share of the minors, she gave a special mortgage on a tract of land known as the McMaster tract, subsequently sold by her, and now in the possession of her co-defendants, Carl and Stephens.

In April, 1850, the plaintiffs, now having capacity to stand in judgment, instituted an action against their mother, in which they prayed that the adjudication of the community property made to her be declared null and void, on account of informalities in the family meeting; that she be decreed to pay them the sum of $9200, on account of the sale by her of the undivided half of the McMaster tract of land, belonging to them, and of interest on said price at the rate of eight per cent per annum since it became due; and also, other sums received by her, as tutrix, from the successions of their grand-father and of their grand-mother; that a final settlement of the community may take place, and that the defendant be compelled to return to them the property of the succession yet unsold; and to account to them for their share of the revenues of that property, and for the

price of such property of the succession as she may have sold. They finally prayed that their legal mortgage may be recognized from the day of her confirmation as tutrix, and that her property be sold under it, to satisfy their judgment. To the petition is annexed a detailed account of the plaintiffs' claims.

The defendant, *Eunice Carl*, admitted all the facts alleged; and only claimed, in part compensation of the plaintiffs' account, a small amount of debts of the succession paid by her, and the sum of seventy-five dollars a year for the support, education and maintenance of each of the plaintiffs, during their minority.

The plaintiffs admitted that account, and a judgment was entered in conformity with the prayer of their petition; by which the defendant was adjudged to pay them for their share of the McMaster tract of land, and for the revenues of their property, the sum of $18,571 90, with legal interest until paid. They were further adjudged to have a legal mortgage for this sum from and after the year 1834, under art. 3282, C. C.

The plaintiffs, in their petition, had averred their readiness to ratify the sale of the McMaster tract of land and to quiet the title of the purchasers; provided their mother was made to account to them for the price, and interest thereon at the rate of eight per cent per annum.

On the very day the judgment was rendered in their favor, and, as we must believe, in execution of their promise, they went before the recorder of their parish, and executed a release of the legal mortgage existing in their favor on that tract of land, in the name of their mother and tutrix, under art. 3282 of the Code.

Under the judgment in that case, property found in the possession of the defendant, *Eunice Carl*, was sold, and purchased by the plaintiffs at two-thirds of its appraised value; leaving a balance of over $7000 still due them.

As soon as the execution had been returned, the plaintiffs, being in possession of the property thus purchased, instituted the present action; in which they allege that the judgment rendered in their favor is greatly injurious to them, and should be increased so as to include all the property belonging to them, and the fruits it has produced; that through ignorance of their legal rights, they did not claim from their mother in that suit three-fourths of the succession of *Benjamin Hook, Jr.*, to which they are entitled; that nearly all the property purchased by them in satisfaction of the judgment belonged to that succession; that the possession of their mother during their minority was theirs, and she is bound to account to them for the rents and revenues thereof, the property itself being already in their possession; that the bequest of one-half of his property by *Benjamin Hook, Sr.*, to her is excessive, and should be reduced to one-fifth.

They further allege, that their mother has failed to pay them for their share of the McMaster tract of land, and that they are entitled to recover it in kind from *Carl* and *Stephens*. They also aver, that they raised their legal mortgage on the other half of said land, through error and in ignorance of their legal rights, claims and demands against their mother. They set up several grounds of nullity against said release, and ask that it be avoided, and their legal mortgage reinstated. Finally, they claim $50,000 damages, for revenues of the property of *Benjamin Hook*, and the value of such portion of said property as may have been sold.

The defendant, *Eunice Carl*, pleaded the general issue, and averred, that after the death of *Benjamin Hook, Jr.*, she considered herself his only heir, and in consequence of that belief, made no inventory of his property, and kept no

YOUNG
v.
CARL.

account of the revenues it produced or of the expenses incurred on account of it. She prayed that her legal rights be preserved to her; and averred, that during her marriage with *Joseph Young*, he had the sole administration of her property, and that she is not liable for revenues during that time. She also prayed to be allowed a reasonable sum for the support, education and maintenance of *Benjamin Hook, Jr.*, and of the plaintiffs.

The other defendants specially denied all indebtedness from *Eunice Carl* to the plaintiffs, and the right of the said plaintiffs to the property claimed, and its fruits. They further alleged, that by claiming from their mother the price of the McMaster tract of land, and taking a judgment for that price, they had ratified the sale; and also, that their release of the legal mortgage existing in their favor on the other half is valid and binding upon them.

There was judgment in favor of the plaintiffs against their mother for the property claimed, and the sum of $20,000; and against the other defendants, for one undivided half of the McMaster tract of land. The release of the legal mortgage on the other half was set aside and avoided, and the property subjected to that mortgage under the judgment. *Carl* and *Stephens* have alone appealed.

The tutrix not having appealed, the judgment, so far as it affects her, erroneous as it evidently is, must remain undisturbed; our first inquiry will be, whether the alleged indebtedness of the tutrix has been proved against the appellants.

The plaintiffs have adduced evidence to prove the income which the property of *Hook's* and *Young's* successions should have produced, if it had been properly administered; and they claim that the account of the revenues be settled on that basis. In the case of the *Succession of Guillemain*, 2d Ann. 638, we held, that the failure of the tutor to take proper steps to render the property of his ward productive, subjected him to damages at least equal to the interest of the amount due them; and it may be conceded, that in aggravated cases of maladministration and bad faith, the damages claimed might properly be allowed. But we do not think this a case of that kind. By the former laws of the country, and until 1825, the surviving parents inherited the entire succession of their children. This rule of property was known, and we have no doubt that when *Benjamin Hook, Jr.*, died, in 1833, the defendant was not aware that it had been changed by the New Code, and believed herself in good faith his only heir. Her ignorance of the law does not, of course, dispense her from accounting to the plaintiffs. But it may, with propriety, be invoked by *bonâ fide* third persons, in mitigation of the damages she has to pay. We are of opinion, that in the absence of evidence to show the value of the fruits received by her, legal interest only should be charged on the appraised value of the share of the plaintiffs in the productive property of those successions.

It may well be doubted, whether an action against *Eunice Carl*, personally, for a reduction of the bequest made to her, to the disposable portion, can be cumulated with an action brought against her to account as tutrix. But conceding it may, there can be no doubt, that until that action was commenced, she possessed in good faith, under the will, one half of the property left by her husband at his demise. The disposition in her favor was not null, but only reducible to the disposable portion; and whether it was reduced or not, depended upon the future action of her children. Being in possession under a just title and in good faith, the fruits of the property during the continuance of that possession cannot be recovered from her. The question of good faith in this case is analogous to that presented in cases of lesion beyond moiety; and it is well settled in such

cases, that the purchaser is considered in good faith, and owes no fruits on the supplement of the price, before the judicial demand. Troplong, de la Vente, 839, 841.

In stating the account of revenues, the tutrix must be credited with one-half of the revenues of the estate of *Hook*, under the will, and with one-fourth of the other half, as heir of *Benjamin Hook, Jr.* The plaintiffs' claim is limited to three-eighths of the revenue of that property.

The plaintiffs have no claim against their mother for fruits, from the time of the marriage of their father with her, in 1824, until his death, in 1834. *Benjamin Hook, Jr.*, died in 1832, while the father and mother of the plaintiffs were both living; and the revenues of the property which they inherited from him belonged to their parents as long as the marriage continued. Before the death of *Benjamin Hook, Jr.*, *Young* had the sole administration of the property, after 1824, believing it to be the paraphernal property of his wife, and used the revenues in his own affairs. If the defendant is responsible for the share of those revenues belonging to the minors, she has her recourse against his succession for the amount due; and as the plaintiffs have accepted that succession, they are estopped, by their warranty, from claiming them in this suit.

The plaintiffs claim the value of ten slaves, alleged to have been sold by the defendant, and forming part of the succession of *Hook*. There is no evidence in the record of the value of those slaves, nor of the time at which they were sold. If they were alienated after the sale of the McMaster tract of land took place, they must be subjected to the legal mortgage of the plaintiffs, before the McMaster tract can be reached. The defendants are entitled to the benefit of the doubt resulting from the insufficiency of evidence, which it was incumbent upon the plaintiffs to produce. So far, therefore, as they are concerned, we will make no allowance for the price of those slaves.

As it results, from the accounts between the parties, that the plaintiffs have received the sum of $9200, which they agreed to take for their share of the McMaster tract of land, the condition upon which they agreed to ratify the sale, if there was such an agreement, has happened; and it becomes unnecessary to inquire into the existence of the legal mortgage claimed by them on the other half. The sum agreed upon will therefore be charged to the defendant.

The defendant is entitled to be credited with the sum of $1375, for the support and maintenance of young *Hook*, and to the sum of $6000, for the support, education and maintenance of the plaintiffs; also, to the sum of $1000, for improvements put by the community upon the property of *Hook*, and $1500 for raising young negroes. Her interest in the property sold at sheriff's sale, under the plaintiffs' execution in the former suit, was appraised at $11,172 50. That property was adjudged to the plaintiffs at two-thirds of that appraisement; and, although they disregard the judgment in that suit, on the ground that it was founded in error, they retain the property acquired under it. They may do so, if their mother consents; but so far as third persons are concerned, the sale, as well as the judgment, must be disregarded, and the property retained by the plaintiffs in part payment of their claim must be appraised at its full value. The amount of the appraisement made before the judicial sale must, therefore, be credited to the defendant. The defendant is further entitled to a credit of ten per cent on the revenues, for her commissions as tutrix; and interest must be allowed on all sums paid by or due to her, from the time they were paid or became due.

By an account made in conformity with this opinion, and filed in the record for reference, it appears that the plaintiffs have been overpaid the sum of $2144 48. They have, therefore, no claim against *Carl* and *Stephens*, and the judgment against them must be reversed.

It is therefore ordered, that the judgment, so far as it adjudges one undivided half of the McMaster tract of land to the plaintiffs, and recognizes the existence of their legal mortgage on the other undivided half of said tract, be reversed. It is further ordered, that the defendants, *Carl* and *Stephens*, be for ever quieted in their possession and title of, and to said tract of land, against all claims and pretensions of the plaintiffs; and that the legal mortgage, which heretofore affected the other half of that tract of land, in the name of *Eunice Carl*, as tutrix of the plaintiffs, under art. 3282, C. C., be cancelled, and entered as released in the record of mortgages. It is further ordered, that the plaintiffs pay costs in both courts.